I think I'm sitting in the wrong room. We do our best. HSH Nordbank, BUS? Yes, Your Honor. Mr. Hoff? Yes. Is yours a Section 101 case? No, it's not, Your Honor. Oh, good. Equitable subrogation. Good morning, and may it please the Court. My name is Chris Hoff, and I represent the appellant, HSH Nordbank AG. Nordbank raises two errors on appeal. First, the Court of Federal Claims erred in holding that Nordbank was not equitable. Let me ask you a big-picture question, okay? From 22 to 26 of the blue brief, you say that the claims court abused its discretion when it treated the motion to dismiss as a summary judgment motion. Yes, Your Honor. Now, that's an alleged procedural error, right? Yes, Your Honor. But you don't appear to contest the claims court's substantive conclusions of law as to Count 3 about the debt owed exceeding any refund. Our position is that it was premature for the Court of Federal Claims to have addressed Count 3 on summary judgment on an incomplete record. Nordbank has had no opportunity for discovery of documents from either CEP, the government contractor. Let's say we find that the claims court didn't abuse its discretion. Yes. Would that moot your arguments as to Counts 1 and 2? No, Your Honor. The contract claims and the assignment of claims that claim are really alternative claims to get at. It's the same relief to get the CEP's deposits, the deposits that the contractor made with BPA back. Even if the amounts exceeded any refund? Well, the analysis is different. On the breach of contract claims, it's a contract-based analysis, which the court did not engage in. And if this court reverses the Court of Federal Claims and finds that Nordbank was indeed equitably subrogated to the rights of CEP, such that it can bring contract claims against the government, then the case should be remanded to the Court of Federal Claims to allow the parties to engage in discovery and then for a contract analysis of what damages there might have been. Under the Assignment of Claims Act, it's an entirely different analysis, and the fact that the court granted summary judgment in favor of the government on that claim has no bearing on the contract analysis that the court didn't reach because it granted summary judgment prematurely, in our view, on that issue. On the equitable subrogation issue, the government argues that only sureties may qualify for equitable subrogation. Quoting from the government's brief, this court has recognized that equitable subrogation applies only in two circumstances, when the surety takes over contract performance or when it finances completion of the defaulted contract. And the second part of that quotation is a quotation from this court's decision in Insurance Company of the West, but that's not what this court said in Insurance Company of the West. What this court said is we have specified two circumstances in which a surety may succeed to the contractual rights of a contractor against the government, and then specified those two circumstances, which is the same quote from the government's brief. Let me ask you this. If we accept your argument, doesn't it mean that any bank or any financial institution that provides funds for a government contractor to perform a contract can step in and sue the government if the original contractor goes bankrupt? No, Your Honor. That's not the case. So what did you do here to distinguish yourself from that general lender? You didn't step in and perform the contract, right? We did not perform the contract. You didn't provide funds to continue performance of the contract after the contractor's bankruptcy. That's correct, but we did step in when in 2010, BPA sent a loan modification of the Engineering and Procurement Agreement, and this was unexpected, but it was permitted under the Engineering and Procurement Agreement. It sent a modification to CEP requiring that CEP deposit an additional $3.7 million with BPA within $500,000 within a month and an additional $3.2 million within the following three to four months. But they didn't send it to you. They sent it to CEP, and BPA said that if they did not deposit... So you provided them additional funding. We provided additional funding at that point, just as the Linnick Bank... But the government had no idea who was providing the funding. The government had every idea who was providing the funding because we submitted an irrevocable letter of credit directly from Nordbank to BPA in June of 2008. And you provided funding. We provided an irrevocable letter of credit to... This is not helping me distinguish your case from any other bank that provides funding to a government contractor. You provided additional funding when the government said to the contractor, you need to show proof of additional money. We provided additional funding, and we stepped in just as the bank in First National did. We stepped in to provide the additional funding, which is what the bank in First National, the en banc decision of the Court of Claims, which is what the lender did in that case. No, the lender there did something much more, didn't it? Didn't it pay off debts owed by the contractor in that case? It stepped in and continued performance of that contract. Only in a limited sense. It stepped in on a one-time basis. It didn't guarantee performance. It wasn't a surety. The bank in First National was not a surety. It stepped in on a one-time basis, refinanced some debt, and did so. And the Court of Claims in that case held that the general rule is that subrogation applies when a party, not acting voluntarily but under a compulsion, discharges a debt or a contractual obligation of another. And where did you act under compulsion of the government to provide additional funding? You voluntarily provided them additional funding, didn't you? We did not, because we were faced with the same prospect as the bank in First National that all of our underlying collateral, all of the underlying collateral for $25 million in loans, would have been rendered valueless. I still don't see how this is going to distinguish it from any other situation where a bank provides additional funding and the contractor comes back and says, I need more money. And your position is, well, if we don't, we're going to lose our initial debt. Does that mean in every circumstance that bank is going to be equitably subrogated? I think the additional point here, as I mentioned, is that there was an irrevocable letter of credit that Nord Bank submitted to BPA. BPA was well aware and the government... If it had been a check, would that have been sufficient? If it had been a check? Drawn on your bank, the government would be unnoticed that you were providing money. My point is that the Court of Federal Claims distinguished this case from First National on the basis, and this is a quote from the court's decision, the government had no dealings with Nord Bank prior to this lawsuit. And that's simply incorrect. From 2008 to 2012, throughout the course... I think the court was using dealings in a very specific sense. There were no negotiations going on between the government and the bank. Isn't that true? There were no negotiations. The government didn't demand a letter of credit directly from you. It didn't demand a letter of credit specifically from Nord Bank. In fact, the contractor could have gone out and gotten money from anybody if it wanted to. Pursuant to BPA's creditworthiness requirements, CEP had to provide an irrevocable letter of credit from a financial institution. It didn't have to specifically be Nord Bank, but it was Nord Bank in this case. Nord Bank provided the letter of credit. I'm not sure exactly what the Court of Federal Claims meant by the word dealings, but there were dealings. Presumably meant that it had to be something more than providing general financing for a contract to get you into an equitable subrogation role. Well, and that's what... Nord Bank stepped in here and provided $3.7 million of additional funding when it was faced with a potential... CEP was faced with... If another bank had provided that letter of credit, would your position be that they were subrogated? No, I think it's the combination of all these things that makes Nord Bank fit into the exception to the privity rule that the Court of Claims set forth in First National. Why? Because you provided initial funding? Because, one, we had dealings with the government, and if you look at the dealings... Let's put that aside. Is it your view that because you provided initial funding and you were at risk for loss of that investment and then provided more funding to protect that investment, that that's what gets you here? That's right, and that's the general rule. Why would you need to provide more funding, then? If you provide general funding and are at risk for that loss of that investment, why can't you be subrogated just based upon that principle? Because in that case, a bank financial institution would not fall into the exception that the Court of Claims set forth in First National, which was that subrogation applies when a party acting under a compulsion discharges a contractual obligation to protect its own interest, and the interest in First National and the interest here, that Nord Bank that the bank was protecting, was the threat that its underlying collateral was going to be rendered valueless if it didn't take this action. The bank had not authorized CEP to borrow $3.7 million in additional funding in September 2010. It frankly was not inclined to provide the additional funding, but faced with the prospect that all of the underlying collateral that it had for its $25 million in loans that it provided... Isn't that just a business decision? I mean, you recognize this company is potentially going bankrupt unless it has this additional funding. You make the decision to provide more funding so you don't lose your initial funding, but you're taking the risk that you're sending good money after bad. It's no different than when you funded the project in the first place, that you knew this was a startup. It might have been a risk of losing the investment. I don't understand why providing additional funding in itself equitably subrogates you. The bank and First National made a business decision to refinance the loans, and the Court of Claims... But it also stepped into the shoes of a general contractor. The Court of Claims in that case found that the First National was segregated to the rights of the primary lender, because that's who the First National had refinanced the debt of the primary lender. And here, we provided initial funding, and then... You're making the argument, if I understand you, that after providing general funding, there was compulsion on you, on your bank, to provide the additional funding. Yes, Your Honor. Let's look at the nature of that compulsion. Were you compelled to do this for the government's benefit? Did the government benefit from your bank's feeling compulsion? To the extent that... And I don't know what the government's interest in continuing with the Wind Farm Project was, but to the extent that the Bonneville Power Administration had an interest in proceeding with the interconnection and with the project, then yes, it was to the government's benefit. I understand why you felt compulsion to protect your interest, you being the banker. But I'm trying to find a linkage between your second round of funding and the interests of the government. Well, I'm not sure that there is an interest beyond what I've just described, that the government had an interest in continuing with the project. But it was the same interest that the bank had in First National, as I've mentioned, which was to protect the value of its underlying collateral. I see that I'm into my rebuttal time. I want to make just a couple of points, because I think the questions and the answers amply elucidate what this case is about. To explain the difference between this case and the First National case, it seems to me that there are arguments to be made both ways. There, the bank specifically paid off a loan to the Small Business Administration, so they specifically took over at least part of the contract and paid for something. Here, they gave an additional letter of credit, which the company could draw on. I mean, money is somewhat fungible. Why is it providing a letter of credit comparable to paying off a loan? The letter of credit related to an entirely different contract that's not at issue in this case. It was called a transmission agreement, by which BPA dedicated transmission services to CEP funding, but required a letter of credit to ensure that CEP funding paid for that dedicated service. But this case is not about that. This case is about an engineering agreement and an environmental agreement, pursuant to which deposits were placed with BPA by CEP funding. Nord Bank, which was simply a bank that lent money to CEP funding, totally outside any purview of the government, is now claiming it's equitably subrogated to the right to sue for those deposits. I think Your Honor's first point, which is that if you disagree with their procedural objection, the case is over, because that means that debt was higher than the pot is correct. So that if you find that, I disagree with my esteemed opponent, that the case goes on. It doesn't. It would mean that there's no challenge to the Court of Claims' decision that the debt outweighed the deposits and there was an offset that was legitimate and took that away. Well, that wasn't exactly my question. My question was, if we agree with the Court's determination to convert and treat the motion to dismiss as a motion for summary judgment, then, which is an alleged procedural error, they didn't have anything else about count three. That's right. And the Court of Claims upheld the government's position on count three, which means yours court upholds the Court of Claims, which means the case is over. That's our position. On the question of First National, the basic distinction is the one you made from the bench, which is that the refinancing bank paid off the debt of the contractor to the original bank and thereby stepped into the shoes, you pointed out, of the original lender. It's a little bit ambiguous whose shoes this court said the refinance lender stepped into. It could have been both sets of shoes, and I think it probably was both sets of shoes, but the distinction between that case and this case is that, admittedly, all Nord Bank did was lend money to CEP funding the contractor. It didn't undertake an obligation that CEP funding had to BPA, which is what the refinance bank did with respect to the obligation the contractor had to the initial lender in First National. This court very recently addressed a different claim about equitable subrogation which was an attempt to reduce sovereign immunity, to allow lenders to come in and be equitably subrogated under all circumstances. The slippery slope you pointed out, I see no principled way to limit, so it would be opening the floodgates and thereby reducing sovereign immunity almost to nothing when there's a lender that qualifies under the Assignment of Claims Act. But the case you decided just a month ago is 805 Federal 3rd 1082 Fidelity and Guarantee Insurance Underwriters. In that case, an insurance company that stepped into the shoes of the government contractor to protect the government contractor against an asbestos liability claim by a worker on a postal service, which the government contractor was renovating. What do you mean by a government contractor? A company that was hired by the postal service to renovate the postal facility where there was asbestos. So the government contractor was concerned that when it did the work, if one of its workers stated that there was cancer or some other disease based on the asbestos, he would be liable. So he took out insurance against that by virtue of a general insurance policy. But in addition, he and the postal service modified the contract that said that if there was such an asbestos related claim and the contractor was found liable, the postal service would indemnify the contractor for all damages. When that happened and a postal worker sued the contractor for whatever reason, the postal service refused to abide by what the contractor believed was an indemnity provision of the contract. So instead, the general insurance company stepped in and protected the contractor. So the general insurance company said, okay, we've really satisfied an obligation the postal service had under the contract by us stepping in and doing it, so we should be subrogated to the rights of the contractor to sue the postal service for indemnity for the sums that we paid. And this court rejected that in this underwriter's case, stating that yes, the general insurance company might be subrogated to the claim of the contractor to sue, let's say, the manufacturer of the asbestos. That is, yes, in the shoes related to that issue. But it had nothing to do with reconstructing the postal facility, and therefore it was not stepping into the shoes of the contractor with respect to the contract between the contractor and the postal service. Therefore, there was no right of the general insurance company to sue the postal service under an equitable subrogation theory, and it threw that out. That case was a lot easier than this case. In this case, there's no allegation that anybody's stepping into anybody's shoes. So if you threw out that case, our position is, ah, for sure, you have to throw out this case. That's all I have, Your Honors. Thank you. Just a couple of quick points. On the compulsion issue, the compulsion went not only to the loss of collateral, but if Norbank hadn't stepped in and provided the additional loan funding in 2010, the BPA would have almost certainly ended up drawing on the letter of credit. So we were compelled in losing both value of the collateral and being forced to provide additional funding. And Mr. Leavitt's correct that the letter of credit did pertain to the transmission and services agreements, but all of these contracts were interrelated. And to the extent that Norbank defaulted on, or that CEP defaulted on any of them, they would have almost by definition defaulted on all of them. And on the abuse of discretion question and whether this court's affirmance on the abuse of discretion issue, on the procedural issue, would necessarily result in the resolution of the case. That issue wasn't briefed. The court below didn't address it. The government doesn't cite any authority for the proposition that the Court of Federal Claims findings on the Assignment of Claims Act would resolve the breach of contract issue. I don't agree with that. On count three, you didn't argue anything other than the procedural. Right, that's right. So if you lose it, you lose on count three. Well, we felt that it was premature for the court to have addressed it, so it's an incomplete. But if we disagree, you didn't challenge the propriety on the merits of the summary judgment determination. That's right, because we felt that it was an incomplete record. Thank you, Your Honor. Thank you, counsel. These matters stand submitted. We're adjourned. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m.